# Case No. 9,168.

## MARTIN v. UNITED STATES.

### [Hoff. Land Cas. 146.][1]

District Court, N. D. California, June, 1856.

MEXICAN LAND GRANT—VALIDITY—UNITED STATES —THIRD PARTIES.

This claim entitled to confirmation as against the United States, but without prejudice to third parties.

[Cited in Meader v. Norton, 11 Wall. (78 U. S.) 457.]

<hr>

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

Claim for one square mile of land in Napa county, rejected by the board, and appealed by the claimant.

Stanly & King, for appellant.

William Blanding, U. S. Atty., for appellees.

HOFFMAN, District Judge. The claim of the appellant in this case is founded on a grant made in 1836 by Governor Manuel Chico to Nicolas Higuera. The authenticity of this grant is fully proved, nor does its validity appear to have been questioned either by the board or the law agent of the United States. The original grant and the expediente from the archives are produced, and the record of the act of judicial delivery of possession is also exhibited, showing that Higuera was personally put into possession of his land, and the boundaries were definitely established by proper authority. It is also shown that the conditions of the grant were fully complied with by Higuera, who appears to have enjoyed the uninterrupted possession of the grant, except those portions which he may have sold, until his death. There appears then to be no doubt of the validity of the original grant as against the United States, nor do I understand it to be disputed on their behalf. This fact having been ascertained, it would seem that the chief duty of this court is performed, and that the claim should be confirmed. It is however opposed nominally on behalf of the United States, but really in behalf of parties claiming under Higuera and affirming the validity of the original grant, but denying the rights of the present claimant [Julius] Martin, to the portion of the land alleged to have been conveyed to him. The real controversy is, therefore, between the claimant and third persons, and this court is asked in effect to decide between parties whose interests, by the very terms of the act, its decree cannot affect.

If under cover of proceedings instituted to ascertain the rights of the United States to the lands claimed under grants of the former government, all persons claiming adverse interests could come into the controversy and obtain an adjudication upon their conflicting titles, it needs no argument to show that this class of cases would soon assume so complicated and embarrassing a form as to indefinitely protract their final determination. In the mass of adverse claims which might be presented for the same land, and in the innumerable questions which might arise of fraud, accident or priority, or of heirship, devise, partition, succession, purchase, etc., under the Spanish or American laws, the great object for which the proceedings were instituted and the jurisdiction conferred upon the board and on this court would in many cases be wholly lost sight of, and the time and labor of the court would be devoted to trying a complicated series of cross ejectments in a suit not

dissimilar to a proceeding in rem. But if this court were to undertake to adjudicate upon the rights of adverse claimants as between themselves, the very nature of the proceeding would require it to permit all such claimants to intervene in every suit. The impracticability of allowing this right was demonstrated in the opinion delivered by Mr. Commissioner Thornton in case No. 2 before the board, and for the reasons there assigned this court has heretofore decided that after ascertaining the validity of the original grant as against the United States, it would not attempt to adjudicate upon the rights of various claimants under the original grantee, but would decree in favor of the party presenting the application, provided he showed a prima facie right to the confirmation of his claim. In this way alone could the inquiries before this court be limited to the questions the act intended it should decide, while all questions of mere private right would be settled before the ordinary judicial tribunals of the country to which all parties have access.

The only question then to be determined in this case is: Do the mesne conveyances to the claimant show such a prima facie right in him as entitles him to a decree in his favor, or are they so clearly void as to make it incumbent to reject his claim, although we are satisfied that the land in no event can be the property of the United States? The claim was rejected by the board on the ground that the description of the land in the mesne conveyances by Higuera to Fallon and wife, and by the latter to the claimant, was vague and uncertain, and that therefore nothing passed by the deeds. The description is as follows: "A certain quantity of land lying, being and situated in the district and territory already named in the valley of Napa, containing more or less one mile square of land in the place known as the Rincon de las Carneras, commencing on the wagon road and ending at the point of the hill on the east."

Much additional testimony has been taken in this court. Had that testimony been before the board, it is not certain that their decision might not have been different.

It is, I think, sufficiently established by the proofs, that the Rincon de las Carneras is a triangular piece of land embraced between Napa river on one side and the arroyo de las Carneras on the other. These two streams come together at an acute angle at the south, forming the apex and two sides of a triangle. The limits of the Rincon on the north seem not very definite; but the boundaries of the land in that direction are indicated in the conveyance with tolerable distinctness. A line drawn from the wagon road to the point of the hills on the east would nearly form the base of the triangle above described, and I think sufficiently shows the intended limits of the grant in that direction. If then the grant had been of the Rincon, commencing at the line above stated, I do not perceive that any doubt could exist as to the precise tract intended to be conveyed. But the words of the grant are "a quantity of land containing more or less one mile square in the place kown as the Rincon de las Carneras, commencing," etc. Was this then a grant of one mile spuare out of the larger quantity contained in the Rincon, or did the grantor intend to convey the Rincon from the line mentioned, adding a rough estimate of its supposed. extent? I incline to the latter view. If the parol testimony taken be deemed admissible, there cannot, I think, remain any doubt on the point, and the equitable right of the claimant as against his grantor and his heirs to have the land according to the limits originally intended, would seem indisputable. The looseness and inaccuracy of the estimates of the area of land formed by the Mexican population of the country is notorious, and there is nothing improbable in the supposition that a piece of land containing in fact eighteen hundred acres should be described as containing a "square mile more or less." If the intention had been to restrict the grantee to the precise quantity of one mile on the line mentioned, the words "more or less" would hardly have been introduced. The fact that they are in the deed shows that the grant was not intended to be of any specific quantity of land, but of some tract present to the mind and before the eyes of the parties. That tract or piece of land must have been the Rincon, limited on the north by the line mentioned in the grant.

It is unnecessary, however, to discuss the question further, for no decision of the court on this point can ultimately bind the parties who alone are the contestants. I think it clearly our duty to confirm the claim as against the United States to the whole Rincon, south of the line mentioned, without prejudice however to the rights of any third parties having or pretending to have any adverse title to the same land or to any part of it.

---

MARTIN (UNITED STATES v.). See Cases Nos. 15,728–15,732.